# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 16, 2021       Decided September 2, 2022
                                Reissued September 13, 2022

No. 20-7111

XINGRU LIN,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00645)

*Kelsey Dennis*, Student Counsel, argued the cause for appellant.   On the briefs was *Aderson Francois.*

*Thais-Lyn Trayer*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees.   With her on the brief were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Deputy Solicitor General, and *Ashwin P. Phatak*, Deputy Solicitor General.

Before: MILLETT, RAO and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT

Opinion concurring in part and dissenting in part by *Circuit Judge* WALKER.

MILLETT, *Circuit Judge*:  In February 2016, Xingru Lin was working as a bus ticketing agent in Washington, D.C. when Yokasty Rodriguez attempted to sneak onto a bus headed to New York without a ticket.  After Lin ordered Rodriguez off the bus and attempted to photograph her, the two women got into a scuffle.  When District of Columbia Metropolitan Police officers arrived in response to Rodriguez's call reporting Lin for assault, Lin, whose first language is Mandarin, was unable to communicate her version of events effectively due to her limited English proficiency.  Although Lin was seated, calmly cooperating with the police and attempting to explain the circumstances of the assault, officers grabbed Lin, pressed her against the wall, and then forced her to the floor and handcuffed her.  Lin Opening Br. 5; Gov't Br. 3.  The police charged her with simple assault on Rodriguez and with assaulting a police officer while resisting arrest.

Lin subsequently sued the District of Columbia and the police officers, alleging civil rights violations during this arrest and a second arrest that occurred in April 2016.  She appeals the district court's grant of summary judgment in favor of the District and its officers.

We agree in part and reverse the district court's grant of summary judgment for the District and its officers on Lin's 42 U.S.C. § 1983 wrongful arrest, common law false arrest, and *respondeat superior* claims.  We affirm the district court's grant of summary judgment as to Lin's other claims.

3

**I**

**A**

Lin's claims arise from two separate encounters with police in 2016. The first occurred on the evening of February 15, 2016, while Lin was working as a ticketing agent for Focus Travel Agency.[1] J.A. 83. As part of her job that evening, she supervised the boarding of a bus headed to New York. J.A. 83. A security video shows that, after the tickets were collected and the passengers were seated, Lin, the bus driver, and another person who appears to be a colleague prepared the bus for departure by walking around the outside of the bus, finalizing the loading of the luggage compartment, and checking the tires. Pl. Ex. 1 at 00:30–5:19. At her deposition, Lin said that, after the loading process was complete and the doors were closed for departure, Rodriguez, who did not have a ticket, opened the front door of the bus and attempted to sneak on. J.A. 1197, 1199. Lin approached and, without entering, told Rodriguez that she had to get off the bus. J.A. 1200.

Security footage shows that, after the bus pulled away from the curb, Lin and her colleague talked outside of the agency. Pl. Ex. 1 at 6:20. Lin observed Rodriguez sitting down on some nearby steps and cursing at her. J.A. 1205–1206. So Lin pulled out her cellphone and attempted to photograph Rodriguez. Pl. Ex. 1 at 6:20–6:32. Pursuing a fleeing Lin, Rodriguez grabbed at Lin's phone and began

---

1 In reviewing the district court's grant of summary judgment, we accept Lin's evidence as true and "draw all reasonable inferences" in her favor. *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016).

hitting her. Pl. Ex. 1 at 6:38; J.A. 1206. Lin immediately hit back, and they both scratched each other. Pl. Ex. 1 at 6:39; J.A. 1207.

After a further exchange of heated words, Pl. Ex. 1 at 6:51–7:04, Lin retreated into the safety of the travel agency office, and both Lin and Rodriguez called the police. Pl. Ex. 1 at 7:10–7:49; J.A. 84, 1217.

Officers Corey Vullo and Blake Johnson were the first to arrive in response to Rodriguez's call. Plaintiff's Resp. to Defs'. Statement of Material Facts ("Pltf's Stmn. of Material Facts"), J.A. 877. Outside the travel agency office, they encountered Rodriguez, who was crying and had a cut on her face. Gov't Br. 2; Pltf's Stmn. of Material Facts, J.A. 878. Rodriguez told them that Lin had attacked her "for no reason" as Rodriguez said goodbye to her boyfriend. Gov't Br. 21; Pltf's Stmn. of Material Facts, J.A. 878. Rodriguez pointed to the office and said that a "Chinese woman" inside was the one who attacked her. Gov't Br. 2, 21; Pltf's Stmn. of Material Facts, J.A. 878.

Meanwhile, Lin was on the phone with the police, waiting to be connected to the Metropolitan Police Department's Language Line interpretation service. Lin Deposition Tr. 39:20–40:6 (Oct. 4, 2018), J.A. 1216–1217. When Officer Vullo approached the office, Lin immediately opened the door for him. Lin Opening Br. 4. While holding a cellphone to her ear, she nodded her head, gesturing for him to come in. Lin Opening Br. 4. Although Lin communicated that she was on the phone with the police, Officer Vullo demanded that she hang up. Lin Opening Br. 4. He began speaking with Ms. Lin, but she had significant trouble communicating due to the language barrier. Gov't Br. 2; Pltf's Stmn. of Material Facts,

J.A. 879.   Officer Vullo asked Lin if she wanted an interpreter, but she declined.   Gov't Br. 2.

As Lin was indicating to Officer Vullo that she could only speak Mandarin, Officer Johnson entered the travel agency and promptly ordered Lin:   "Turn around, turn around, you understand turn around don't you?"   Lin Opening Br. 4–5; D.C. Ex. 2 at 2:09–2:14.   Lin did not understand.   J.A. 84, 1267.   Officer Johnson moved her to a chair by twisting her arm behind her back, forcing her to sit down.   Lin Opening Br. 5; Lin Deposition Tr. 91:17–92:18, J.A. 1268–1269.   Once on the chair, she sat calmly while Officers Johnson and Vullo held her arms.   Lin Opening Br. 5; Lin Deposition Tr. 91:17–92:18, J.A. 1268–1269.   Lin's colleague, who was also in the room, attempted to explain that Lin had actually been trying to call the police for help, but Officer Johnson shouted him down.

The two officers then yanked Lin out of the chair and pushed her against the wall.   Pltf's Stmn. of Material Facts, J.A. 880.   Security footage shows that Lin stood motionless as the two officers held her.   At this point, two more officers, Officers Albert Salleh and John Merzig, entered the travel agency and immediately joined in restraining Lin.   Lin Opening Br. 5.   The four officers forced Lin onto the floor and handcuffed her as Lin cried out.   Pltf's Stmn. of Material Facts, J.A. 880–881; Lin Opening Br. 5.

After the handcuffing, Officer Vullo asked for an interpreter, who arrived several minutes later and gathered Lin's side of the story.   Lin. Opening Br. 5; Gov't Br. 4.

Officer Vullo then talked to Rodriguez, who was still standing outside.   Gov't Br. 4.   Rodriguez stated that she "was just gonna go say bye" to her boyfriend when Lin told her she "ha[d] to go."   Gov't Br. 4; D.C. Ex. 2 at 3:35–3:45.

Rodriguez claimed that she tried to reassure Lin that she was not getting on the bus, but that Lin shouted at her to "get out right now." D.C. Ex. 2 at 3:50–4:05. Rodriguez then made an illustrative pulling motion with her hand. Gov't Br. 4. According to Rodriguez, Lin then exclaimed that she would call the police and scratched her face. Gov't Br. 4.

While Officer Vullo spoke with Rodriguez, Officer Merzig viewed the travel agency's outdoor and indoor security footage in a back room. Lin Opening Br. 6; Gov't Br. 4. Lin's colleague helped Officer Merzig play the security footage and provided his perspective on the evening's events.

The security cameras showed at least three different angles on the bus. When Officer Merzig observed footage of Rodriguez sneaking onto the bus, he reacted with, "Hmm. Yeah, no. I just, I just saw her go on." Gov't Br. 4; Pltf's Stmn. of Material Facts, J.A. 882; D.C. Ex. 4 at 12:38–12:42. As the officer continued watching the recordings, Lin's colleague explained that the physical altercation between the two women happened after the bus left. Gov't Br. 4; Pltf's Stmn. of Material Facts, J.A. 882. He then enthusiastically gestured at the footage and emphasized that it was Rodriguez who had attacked Lin, not the other way around. Officer Merzig agreed that the security video footage demonstrated that, contrary to Rodriguez's story, the assault occurred after the bus had departed, and Rodriguez was "the aggressor." Gov't Br. 4; Pltf's Stmn. of Material Facts, J.A. 882.

Officer Merzig brought Officer Vullo back to view the footage. After seeing the videos, Officer Vullo agreed with Officer Merzig that they would have to cut Lin loose. Officer Zhang Deposition Tr. 225:14–225:19 (Jan. 17, 2019), J.A. 1521; D.C. Ex. 2 at 18:39–18:41. Officer Merzig replied, "Yeah, oh yeah, I mean, that's my opinion." Ex. 2 at 18:41–

18:44.  They determined that Rodriguez should be arrested for unauthorized entry of a motor vehicle and assault.  Pltf's Stmn. of Material Facts, J.A. 882.  The officers then removed Lin's handcuffs.  Pltf's Stmn. of Material Facts, J.A. 882.

The police investigation shifted to determining if Lin should be arrested for assaulting a police officer on the theory that she resisted arrest when they tried to handcuff her.  Lin. Br. 6. Officer Vullo told the supervising officer on scene, Sergeant Christopher Ritchie, that Lin had pulled and yanked when they tried to arrest her.  Gov't Br. 5.  Sergeant Ritchie then questioned the other officers on the scene about the handcuffing.  Gov't Br. 5.  Officer Johnson reported:  "She wasn't flailing at us, she was just not allowing us to handcuff her."  Gov't Br. 6; D.C. Ex. 4 at 19:57–20:02.  Sergeant Ritchie asked, "So she was actively resisting you?"  D.C. Ex. 4 at 20:02–20:04.  Officer Johnson replied:  "Passively, yeah."  Lin Opening Br. 6; Gov't Br. 6; D.C. Ex. 4 at 20:04–20:06.  Officer Merzig interjected, "She was pulling away." Gov't Br. 6; D.C. Ex. 4 at 20:07–20:08.  Subsequently, Sergeant Ritchie reviewed the footage from both the incident with Rodriguez and the handcuffing.  Pltf's Stmn. of Material Facts, J.A. 882.

Sergeant Ritchie decided to arrest Lin for assaulting a police officer, and Lin was placed in handcuffs again, this time without incident.  Pltf's Stmn. of Material Facts, J.A. 883. Before leaving the travel agency, Sergeant Ritchie advised the officers that Lin should be charged with assaulting a police officer and Rodriguez should be charged with unauthorized entry of a motor vehicle and simple assault.  Pltf's Stmn. of Material Facts, J.A. 884.  But when Officer Vullo returned to the police station, he charged Lin with simple assault as well as assaulting a police officer.  Pltf's Stmn. of Material Facts, J.A. 884.

At the police station, Lin gave a statement through an interpreter. Lin. Deposition Tr. 40:15–41:8, J.A. 1217–1218. The police then transferred her to the hospital because she was complaining of pain. Lin Deposition Tr. 41:5–41:8, 49:2–49:15, J.A. 1218, 1226. Medical personnel took an x-ray and prescribed Lin medicine for back, neck, and shoulder pain. J.A. 88; Lin Deposition Tr. 49:21–50:8, J.A. 1226–1227. The medical evaluation noted bruises on Lin's back. J.A. 901. She was held in jail overnight, but both charges were dropped the next day. J.A. 88.

**B**

Just before noon on April 12, 2016, while Lin was again checking tickets and supervising bus boarding at Focus Travel Agency, Valente Fanning arrived with an expired ticket. J.A. 89; Lin Deposition Tr. 52:8–52:19, J.A. 1229. Fanning nevertheless tried to board a bus to Philadelphia, pushed past Lin, and stepped on her foot. Lin. Deposition Tr. 56:8–56:20, J.A. 1233. As a result, Lin lost her balance and grabbed onto Fanning's jacket to steady herself. Lin Deposition Tr. 58:14–59:9, J.A. 1233. Fanning later exited the bus because he was heading to New York, not Philadelphia. Lin Deposition Tr. 58:8–59:9, J.A. 1235–1236. He then called the police. Pltf's Stmn. of Material Facts, J.A. 885.

Officer Barbara Shelton arrived outside the Focus Travel Agency office and interviewed Fanning, who said that Lin had grabbed his jacket, ripped it, and ejected him from the bus. Pltf's Stmn. of Material Facts, J.A. 885. Seeing that the lights were turned off at the travel agency, Officer Shelton left and told Fanning to call back if he saw Lin. Pltf's Stmn. of Material Facts, J.A. 886–887.

A different officer arrived later in response to a "second sighting" of Lin. Pltf's Stmn. of Material Facts, J.A. 887. He arrested Lin and took her to the police station, where she communicated with officers in part through the Metropolitan Police Department Language Line. Pltf's Stmn. of Material Facts, J.A. 887–888. After two hours, the Metropolitan Police released Lin with a citation for simple assault. J.A. 90. Charges were later dropped, but her arrest remains on the public record. J.A. 91.

## C

Lin then filed suit against the District of Columbia and eight Metropolitan Police Department officers (collectively, "District"), for violating her civil and common-law rights.[2]

As relevant here, Lin filed suit under 42 U.S.C. § 1983, claiming that her wrongful arrest in February 2016 and the excessive force used by the officers in handcuffing and arresting her violated her Fourth Amendment rights.[3] Lin also alleged false arrest, negligent infliction of emotional distress, and assault and battery claims against the officers involved in the February incident, as well as negligent supervision and

---

2 The Metropolitan Police Officers named in Lin's Third Amended Complaint are Officers Corey Vullo, Albert Salleh, John Merzig, Blake Johnson, Barbara Shelton, and Timothy Jefferson, as well as Sergeants Christopher Ritchie and Francis Martello. Lin later voluntarily dismissed her claims against Sergeant Martello.

3 Section 1983 provides: "Every person who, under color of any [law] * * * of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights * * * secured by the Constitution and laws [of the United States], shall be liable[.]"

training and *respondeat superior* liability on the part of the District of Columbia, all under D.C. law. Finally, the complaint alleged that both the February and April arrests rendered the District of Columbia liable for negligent training, and denial of equal treatment based on Lin's race, color, or national origin, under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the D.C. Human Rights Act. J.A. 112–114.

After discovery, the District moved for summary judgment, which the district court initially granted as to all claims except for Lin's Section 1983 wrongful arrest, false arrest, and *respondeat superior* claims, all as they related to her February arrest for assault on a police officer. *Lin v. District of Columbia*, No. 16-645, 2020 WL 3542253, at *1 (D.D.C. June 30, 2020) (*Lin I*). The district court determined that there was probable cause to arrest Lin for simple assault in both February and April, *id.* at *7–10, but denied summary judgment on the other claims because the evidence was inconclusive as to whether there was probable cause to arrest Lin for assaulting a police officer, *id.* at *9.

Turning to Lin's excessive force, negligent infliction of emotional distress, and assault and battery claims, the district court granted summary judgment to the District because, even taking the facts in the light most favorable to Lin, the police did not use excessive force during the February arrest, causing all three claims to fail. *Lin I*, 2020 WL 3542253, at *10–12, *18–20.

The district court also granted summary judgment to the District on Lin's negligent supervision and training claim. The court reasoned that a single incident—Lin's February arrest for assaulting a police officer—during which the supervising sergeant conducted an independent investigation

was insufficient to establish liability. *Lin I*, 2020 WL 3542253, at \*17–18. The district court rejected evidence of past misconduct from other court cases against the Metropolitan Police because, in the district court's view, Lin had not presented any "evidence connecting prior allegations of unrelated misconduct to" her arrests. *Id.* at \*18.

Lastly, the district court granted summary judgment to the District on Lin's Title VI and D.C. Human Rights Act claims. *Lin I*, 2020 WL 3542253, at \*22–24. The district court concluded that Lin had not shown that Rodriguez and Fanning were similarly situated to her, and so their different treatment did not give rise to an inference of discrimination. *Id.* at \*23.

The District moved for reconsideration, arguing that, if there was probable cause to arrest Lin for simple assault in February—and so an arrest was lawful—then it was irrelevant that there may not have been probable cause to arrest Lin specifically for assaulting a police officer. The district court agreed and granted summary judgment to the District on all counts. *Lin v. District of Columbia*, No. 16-645, 2020 WL 5816235, at \*4 (*Lin II*).

## II

The district court exercised jurisdiction under 28 U.S.C. § 1331, and this court has appellate jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's decision to grant summary judgment. *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016).

## III

We affirm in part and reverse in part. We reverse only the grant of summary judgment on Lin's Section 1983 wrongful

arrest, common law false arrest, and *respondeat superior* claims because there are material disputed facts over whether the police had probable cause to arrest Lin for simple assault or for assaulting a police officer in February 2016. We affirm the rest of the district court's judgment.

**A**

We first address Lin's procedural objection to the district court's decision to reconsider its initial summary judgment ruling and then grant full summary judgment to the District. Lin argues that the district court abused its discretion under Federal Rule of Civil Procedure 54(b) by granting the District's motion for reconsideration.

Rule 54 allows "any order" that "adjudicates fewer than all the claims" in a case to "be revised at any time before the entry of a judgment adjudicating all the claims[.]" FED. R. CIV. P. 54(b). We review the district court's decision to reconsider its initial decision for an abuse of discretion. *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011).

In Lin's view, the district court erred because the District's motion for reconsideration "cited no new facts nor any significant change in case law; nor did [the District] allege that any of [its] arguments were misunderstood by the district court." Lin Opening Br. 16.

There was no abuse of discretion. Rule 54(b) allows district courts to be "flexible" in considering "the interlocutory presentation of new arguments as the case evolves[.]" *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). District courts also have discretion to hear motions for reconsideration "as

justice requires." *Capitol Sprinkler Inspection, Inc.*, 630 F.3d at 227 (citation omitted).

In this case, the district court's grant of reconsideration appropriately responded to the evolution of legal issues in the litigation. When the district court first considered the District's motion to dismiss, the litigants and the court considered separately the issues of probable cause to arrest Lin for simple assault and for assaulting a police officer. That led the district court to find that probable cause existed to arrest Lin for simple assault, but not for assaulting a police officer. *Lin I*, 2020 WL 3542253, at *7–9.

But once the district court found probable cause for the simple assault charge, that laid the legal groundwork for the District to argue that, as long as the police officers had probable cause to arrest for some offense, the arrest was proper regardless of whether they also had probable cause to arrest for assaulting a police officer. Revisiting a ruling as legal issues develop over the course of litigation falls squarely within Rule 54(b)'s wheelhouse.

**B**

Lin argues that the district court erred in granting the District summary judgment on her claims of false arrest in violation of the Fourth Amendment and District of Columbia law. In particular, she contends that there are disputed issues of material fact as to whether there was probable cause to arrest her for assaulting either Rodriguez or a police officer. There is merit to Lin's objections.

The Fourth Amendment guarantees Lin the right to be secure in her "person[] * * * against unreasonable searches and seizures" by the police. U.S. CONST. Amend. IV. There is no

question that an arrest is a "seizure" of a "person" within the meaning of the Fourth Amendment. *Torres v. Madrid*, 141 S. Ct. 989, 996 (2021). Seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (citation omitted).

One of those exceptions allows a warrantless arrest if the officer has "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see Dunaway v. New York*, 442 U.S. 200, 208 (1979).[4]

The existence of probable cause depends on "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest[,]" *Devenpeck*, 543 U.S. at 152, and is based on "the totality of the circumstances," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). Probable cause requires "more than bare

---

4 In *Terry v. Ohio*, the Supreme Court recognized a further exception to the probable cause requirement for a brief investigative detention if an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]" 392 U.S. 1, 30 (1968). Such a detention must be based on "'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citation omitted). The parties debate whether the first time that Lin was handcuffed was merely an investigatory detention under *Terry v. Ohio*, or a full-blown arrest. We agree with the parties that we need not resolve the issue because the officers had probable cause to arrest Lin for simple assault when they first handcuffed her.

suspicion," but "less than a preponderance of the evidence." *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016). What is required is a "substantial chance of criminal activity[.]" *Wesby*, 138 S. Ct. at 586 (quoting *Illinois v. Gates,* 462 U.S. 213, 243–244 n.13 (1983)).

Determining whether probable cause existed is an "objective inquiry" that asks "whether the officer acted on the basis of 'reasonably trustworthy information * * * sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *Hall v. District of Columbia*, 867 F.3d 138, 154 (D.C. Cir. 2017) (citation omitted).

We reverse the district court's grant of summary judgment on the false arrest claims for two reasons. First, there is a genuine dispute of material fact as to whether probable cause for the simple assault charge dissipated before Lin was handcuffed a second time and taken involuntarily to the police station. Second, there is a genuine issue of material fact as to the existence of probable cause to arrest Lin for assaulting a police officer.

**1**

We agree with the district court that the police officers had probable cause to arrest Lin for simple assault at the time they first handcuffed her.

District of Columbia law defines simple assault as: "(1) an attempt, with force or violence, to injure another; (2) [with] the apparent present ability to effect the injury; and (3) [with] the intent to do the act, constituting the assault." *Stroman v. United States*, 878 A.2d 1241, 1244–1245 (D.C. 2005) (citation omitted) (interpreting D.C. Code § 22-404(a)(1)).

At the time the police first handcuffed Lin, the officers had received a call from Rodriguez claiming that she had been assaulted. Pltf's Stmn. of Material Facts, J.A. 877; D.C. Ex. 2 at 0:58–1:00. Rodriguez's report was corroborated by her physical appearance and emotional state when Officer Vullo arrived on the scene. Gov't Br. 2. He observed Rodriguez standing outside the travel agency crying and with a cut on her face. D.C. Ex. 2 at 1:08; Pltf's Stmn. of Material Facts, J.A. 878; Gov't Br. 2. Rodriguez reported that Lin had hit her "for no reason" while she was saying goodbye to her boyfriend. D.C. Ex. 2 at 1:12–1:13, 1:18; Pltf's Stmn. of Material Facts, J.A. 878. Rodriguez then pointed inside Focus Travel Agency and identified Lin as her assailant. D.C. Ex. 2 at 1:25; Pltf's Stmn. of Material Facts, J.A. 878.

Officer Vullo's initial interactions with Lin did not clear the air. Certainly, Lin was compliant with his orders and was also on the phone with the Police Department when he arrived. Lin Opening Br. 4. But at that time, neither she nor her colleague had provided any information to the officer indicating that she was the true victim. D.C. Ex. 2 at 1:45–2:02; *see* Lin. Opening Br. 4–5.

Those circumstances gave rise to probable cause. The apparent victim of the offense, Rodriguez, had "communicate[d] to the arresting officer information affording credible ground for believing that the offense was committed"; Rodriguez "unequivocally identifie[d] the accused as the perpetrator"; and, at this preliminary stage in the investigation, "materially impeaching circumstances [were] lacking." *Pendergrast v. United States*, 416 F.2d 776, 785 (D.C. Cir. 1969); *id.* at 784 (finding probable cause where a victim with a "bloody face" described "salient details" about the incident,

identified the alleged assailant, and repeatedly asserted that he was not mistaken as to the identification).

Given the information they had, Officers Vullo and Johnson had probable cause to arrest Lin for simple assault without first waiting to hear her full explanation. That is because an "officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Amobi v. District of Columbia Dep't of Corr.*, 755 F.3d 980, 990 (D.C. Cir. 2014) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395–396 (2d Cir. 2006)). Instead, "[i]t is enough" for probable cause "that the police officer * * * received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth." *Daniels v. United States*, 393 F.2d 359, 361 (D.C. Cir. 1968) (per curiam). In other words, because no cracks in the officers' probable cause had yet surfaced that would have warranted a more probing inquiry, the officers had the authority to arrest and handcuff Lin at that very early stage of the investigation.

**2**

The district court nevertheless erred in granting summary judgment to the District on Lin's wrongful arrest and common law false arrest claims because there is a genuine dispute of material fact over whether probable cause for the simple-assault arrest had dissipated and required the police officers to release Lin—all before a separate decision was made to arrest her for resisting the police.

A corollary of the rule that probable cause requires a "totality-of-the-circumstances analysis," *Hall*, 867 F.3d at 154 (quoting *Gates*, 462 U.S. at 238), is that "new facts" can "negate probable cause," *United States v. Spencer*, 530 F.3d

1003, 1008 (D.C. Cir. 2008) (emphasis omitted).  As a result, a person "must be released from arrest[] if previously established probable cause has dissipated."  *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007).[5]

The information that the police gathered after they initially handcuffed Lin uniformly discredited Rodriguez and creates a genuine issue of material fact as to whether there was probable cause to keep Lin under arrest (or to re-arrest her after unhandcuffing her, as Lin claims, Lin Opening Br. 18).

After Lin had been arrested and handcuffed, subsequent investigation on the scene quickly disproved Rodriguez's version of events.  To start, while Rodriguez had told Officer Vullo that she went to the bus to say goodbye to her boyfriend, security camera footage showed Rodriguez trying to steal onto the bus after the doors had closed and the bus was ready to

---

5 *See Karamanoglu v. Town of Yarmouth*, 15 F.4th 82, 88 (1st Cir. 2021); *Barnett v. MacArthur*, 956 F.3d 1291, 1297 (11th Cir. 2020) ("Just as 'probable cause may cease to exist after a warrant is issued,' it may also dissipate after an officer makes a warrantless arrest.") (citation omitted); *United States v. Brinkley*, 980 F.3d 377, 387 (4th Cir. 2020); *Hernandez v. Boles*, 949 F.3d 251, 260 (6th Cir. 2020); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) ("It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'") (citation omitted); *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause."); *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) ("As a corollary * * * of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.").

depart. Gov't Br. 2, 4; Pltf's Stmn. of Material Facts, J.A. 882; D.C. Ex. 2 at 3:30–3:50, 17:45–18:49.

In addition, Rodriguez indicated that Lin had tried to pull her off the bus while exclaiming that she had to "get out right now" and that she would call the police, following which she scratched Rodriguez's face as Rodriguez was trying to disembark. Gov't Br. 2, 4; Pltf's Stmn. of Material Facts, J.A. 882; D.C. Ex. 2 at 3:40–4:36. So in Rodriguez's telling, there was only one physical altercation during which she was injured, and which ended in calls being made to the police. But the only physical altercation the security footage shows is Rodriguez delivering the first blow, and doing so on the sidewalk after the bus had pulled away. Gov't Br. 4. And that was the assault that led both Lin and Rodriguez to call the police.

To be clear, the record before us does not contain the full security video footage, and what it contains is not crystalline. But what the record does show is that the officers on the scene saw the video footage firsthand and concluded that (1) Rodriguez had attempted to sneak onto the bus twice, Lin Opening Br. 3; Gov't Br. 4; D.C. Ex. 2 at 17:45–18:49, and (2) Rodriguez was the "primary aggressor," D.C. Ex. 2 at 17:22–17:26; Officer Merzig Deposition Tr. 31:2–31:8 (Aug. 31, 2018), J.A. 1125.

In addition to the security videos, body camera footage records Officer Merzig's description of events, stating that Rodriguez "snuck on the bus, she had to be kicked off the bus * * * [but] she got right off." Lin Opening Br. 6; D.C. Ex. 2 at 18:45–18:56. Tellingly, Officer Merzig's description of interactions at the bus makes no mention of an assault taking place on the bus itself. The only assault he discusses is when Rodriguez "attack[ed]" Lin after the bus had departed, Gov't

Br. 4; Lin Opening Br. 6; D.C. Ex. 2 at 18:32–18:35. Multiple times, Officer Merzig described the assault as "start[ing]" with Rodriguez's attack after the bus left. D.C. Ex. 4 at 15:45–15:50; 16:18–16:20; *see also* Officer Merzig Deposition Tr. 30:19–32:2, J.A. 1124–1126.

So taken together, the security videos and body camera footage in the record seem to affirmatively disprove Rodriguez's claim that Lin assaulted her while trying to remove her from the bus—a claim that had been the sole source of the initial probable cause to arrest Lin.

After hearing Officer Merzig's conclusions, Officer Vullo specifically asked whether there were two separate events that involved assaults or just one. Lin Opening Br. 6; D.C. Ex. 2 at 17:39–17:41. He examined the video and listened to Officer Merzig's descriptions with this question in mind, and then concluded that they should "cut her loose"—that she should not remain under arrest for simple assault—to which Officer Merzig agreed. Officer Zhang Deposition Tr. 225:14–225:19, J.A. 1521; Lin Opening Br. 6; D.C. Ex. 2 at 17:42–18:45. Based on that decision, the officers immediately removed Lin's handcuffs. Pltf's Stmn. of Material Facts, J.A. 882**.** As Officer Merzig testified, by this time, "from what I viewed, and from what all the other officers had kind of compiled in the investigation, we determined that [Lin] was the victim" of the simple assault. Officer Merzig Deposition Tr. 33:5–33:9, J.A. 1127. While an officer's subjective knowledge is immaterial to the probable cause inquiry, the officer's conclusions shed light on the content of evidence that they were able to view on scene. *See Hall*, 867 F.3d at 154.

In addition, having called a translator to the scene, Officer Vullo was able to hear Lin's side of the story. Lin Opening Br. 5; Gov't Br. 5; D.C. Ex. 2 at 7:48–8:06. Lin's version

aligned fully with the events on the security video. Lin reported that Rodriguez had tried to open the door of the bus, and Lin tried to stop her. Lin Opening Br. 5; D.C. Ex. 2 at 8:08–8:19. After the bus had pulled away, Lin attempted to photograph Rodriguez, after which Rodriguez assaulted her, they tussled, and they then both called the police. Lin Opening Br. 3; D.C. Ex. 2 at 8:20–8:33.

Finally, a witness to the interactions between Lin and Rodriguez—Lin's colleague—identified Rodriguez as the initiator and perpetrator of the assault, pointing specifically to video footage of their interactions after the bus left. D.C. Ex. 4 at 13:50–14:10. The colleague did not identify any violent interaction occurring on the bus, further undermining Rodriguez's narrative. Pl. Ex. 1.

It apparently was not until Officer Vullo reached the police station later that evening that he first came to the view that there was probable cause to believe that there were two separate assaults, one in which Lin scratched Rodriguez's face on the bus and a second when Rodriguez attacked Lin. J.A. 453–454, 517, 541–542.

Considering the totality of the circumstances and the lack of clarity in the record as to what the police officers were able to see on the security video, there is a genuine issue of material fact as to whether probable cause for the simple assault charge had dissipated before the police handcuffed Lin for a second time and involuntarily transported her to the police station. That is critical because, if probable cause for the simple assault of Rodriguez no longer existed, then the District had to establish probable cause that Lin had assaulted a police officer to be entitled to summary judgment.

**3**

We agree with the district court and Lin that, taking the evidence in the light most favorable to Lin, a jury could find that Sergeant Ritchie lacked probable cause to charge Lin for assaulting a police officer, thereby precluding summary judgment. Recall that probable cause exists when an officer acts based on "reasonably trustworthy information * * * sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Hall*, 867 F.3d at 154 (citation omitted).

At the time of the arrest, the District of Columbia statute prohibiting the assault of a member of the police force provided that "[w]hoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor[.]". D.C. Code § 22-405(b) (2013).

Despite that broad wording, District of Columbia law does "not criminalize every refusal to submit to a police officer or every prevention or hindrance of an officer in his duties." *Ruffin v. United States*, 76 A.3d 845, 850 (D.C. 2013) (citation omitted). "To constitute resisting a police officer, a person's conduct must go beyond speech and mere passive resistance or avoidance, and cross the line into active confrontation, obstruction or other action directed against an officer's performance in the line of duty by actively interposing some obstacle that precluded the officer from questioning him or attempting to arrest him." *Id.* (internal quotation marks and citation omitted). "[T]he key to establishing any violation of" the statute is the existence of "active and oppositional" conduct undertaken "for the purpose of thwarting a police officer in his or her duties." *Id.* (citation omitted).

Whether Lin's reaction to Officer Johnson's effort to arrest her amounted to active and oppositional resistance under Section 22-405(b) is a genuinely disputed material fact. Viewing the evidence in the light most favorable to Lin, a reasonable jury could conclude that Sergeant Ritchie could not reasonably believe that her actions indicated anything other than passivity, reaction to pain, confusion due to the language barrier, and non-resistance to the police officer's use of physical force in conducting the arrest.

Shortly after entering the travel agency, Officer Johnson twisted Lin's arm behind her back and used that position to force her to sit on a bench of chairs. D.C. Ex. 2 at 2:15–2:18; Lin Opening Br. 4–5. Lin exclaimed what sounds like: "Excuse, me! Excuse me!" Lin Deposition Tr. 44:20–45:7, J.A. 1221–1222; D.C. Ex. 2 at 2:16–2:18. She then sat calmly on the chair. Lin Opening Br. 5; D.C. Ex. 2 at 2:20–2:23.

Although Lin remained seated and quiescent, Officer Johnson suddenly yanked her across the room and pushed her up against the wall. Lin Opening Br. 5; Pltf's Stmn. of Material Facts, J.A. 880. Lin alleges that she felt a great deal of pain as Officers Johnson and Vullo pressed her into the wall. Lin Deposition Tr. 44:20–45:17, J.A. 1221–1222. Still, the video footage indicates that Lin stood motionless and passive. Lin Opening Br. 5; D.C. Ex. 2 at 2:23–2:29. One of the officers said "stand up" even though Lin, who is only 5 feet 3 inches, was already standing up. Gov't Br. 3; D.C. Ex. 2 at 2:25; J.A. 997.

The officers then pulled Lin's hands behind her back. Pltf's Stmn. of Material Facts, J.A. 880–881. On the video footage, she remained passive and cooperative, but began crying out. Pltf's Stmn. of Material Facts, J.A. 881; Lin Opening Br. 5. Lin testified that the force used on her arm

made her feel so much pain that she started wailing. Lin Deposition Tr. 45:15–45:17, J.A. 1222; *see also* Lin Ex. 4, J.A. 1002–1003. The video audio captures an audible thump as the four officers forced Lin to the ground. D.C. Ex. 2 at 2:30–2:32. She screamed in pain on the way down. Lin Opening Br. 5; Pltf's Stmn. of Material Facts, J.A. 881; D.C. Ex. 2 at 2:30–2:34. As they handcuffed her, pulling her arms behind her and twisting her shoulders, she continued to cry out in pain. D.C. Ex. 2 at 2:34–3:04; Lin Opening Br. 5; Pltf's Stmn. of Material Facts, J.A. 880–881.

Not long after the arrest, when Sergeant Ritchie arrived at the scene, Officer Johnson reported that Lin was only "passively" resisting. D.C. Ex. 4 at 20:05–20:08; Officer Johnson Deposition Tr. 70:12–70:13 (July 30, 2018), J.A. 352 ("I said that she wasn't actively, but she was passively resisting."). That meant to him that "[s]he wasn't doing motions that would not allow herself to be handcuffed. She was essentially tensing up and not allowing her[self] to be handcuffed." Officer Johnson Deposition Tr. 71:10–71:12, J.A. 353. The video footage is insufficient to resolve the question of whether Sergeant Ritchie had probable cause because it is unclear whether Lin was actively obstructing arrest or reflexively moving her arms in reaction to both the force of multiple police officers combined against her and the resulting pain.

In that regard, we view the record differently from the dissenting opinion. For example, the dissenting opinion emphasizes that Sergeant Ritchie heard the officers on the video instruct Lin to "stop resisting." Dissent Op. at 2. The problem is that the officers' narration does not always align with the events that transpired. Just a few seconds before the officers instructed Lin to stop resisting, they instructed her to stand even though she was already standing. Gov't Br. 3; D.C.

Ex. 2 at 2:25. Further, the dissenting opinion points to reports that Lin was pulling and flailing, Dissent Op. at 2–3; Gov't Br. 5, but those same officers provided clarifying reports of the same events that contradict those characterizations. *See, e.g.*, D.C. Ex. 4 at 20:05–20:08; Officer Johnson Deposition Tr. 70:7–71:18, J.A. 352–353 (Officer Johnson reporting that Lin was only "passively" resisting); D.C. Ex. 4 at 19:56–20:02; Officer Johnson Deposition Tr. 71:3, J.A. 353 ("[Lin] wasn't flailing."). While the dissenting opinion reasons that the footage could be understood to show "active and oppositional conduct," Dissent Op. at 3, Officer Johnson, who was there, said explicitly that Lin was only "passively resisting" and that "[s]he wasn't doing motions that would not allow herself to be handcuffed." Officer Johnson Deposition Tr. 70:12–70:13, J.A. 352; Officer Johnson Deposition Tr. 71:10–71:12, J.A. 353.

All we hold is that, given these factual disputes and contradictions, a reasonable jury crediting Lin's and some of the officers' accounts, as well as other record evidence, could find that Lin's movements were merely passive resistance and that probable cause was lacking. *Ruffin*, 76 A.3d at 850. Accordingly, given the entire record, the district court correctly ruled that there is a genuine issue of material fact as to whether there was probable cause to arrest Lin for assaulting a police officer.

**4**

Because there are genuine issues of material fact as to the existence of probable cause to arrest Lin in February 2016, the district court erred in granting the District's motion for summary judgment on Lin's Section 1983 claim for wrongful arrest, as well as her common law claim for false arrest. *See Amobi*, 755 F.3d at 989 ("Constitutional and common law

claims of false arrest are generally analyzed as though they comprise a single cause of action.").

The existence of genuine issues of material fact as to whether Lin was falsely arrested also requires us to remand Lin's *respondeat superior* claim under District of Columbia law. The District does not dispute that its officers were acting within the scope of their employment at the time of the arrest. *See Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006) ("*Respondeat superior* is a doctrine of vicarious liability and allows the employer to be held liable for the acts of his employees committed within the scope of their employment.") (citation omitted).

We therefore remand these claims to the district court for further proceedings.[6]

**C**

**1**

We affirm the district court's grant of summary judgment on Lin's negligent supervision claim. A negligent supervision claim lies when "an employer knew or should have known its employee behaved in a[n] * * * incompetent manner," and the employer, "armed with * * * actual or constructive knowledge, failed to adequately supervise the employee." *Jenkins v. District of Columbia*, 223 A.3d 884, 898 (D.C. 2020) (citation omitted). Lin argues that Sergeant Ritchie failed to conduct an adequate investigation before authorizing her arrest. For

---

6 On remand, the district court should first consider whether the officers are entitled to qualified immunity or any other relevant privilege from suit they might assert. Because qualified immunity "is an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), we are confident the district court will resolve this issue expeditiously.

this claim, she relies on *District of Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010), which held that a jury could find negligent supervision when sergeants authorized an arrest "without any inquiry on their part into * * * critical information[.]" *Id.* at 797. But here, undisputed evidence shows that Sergeant Ritchie (1) spoke to the officer who was translating for Lin, (2) spoke to the officers who arrested Lin, and (3) reviewed footage of the altercation with Rodriguez and the arrest to determine if she had assaulted Rodriguez or assaulted a police officer. That investigation was sufficiently thorough to preclude Lin's negligent supervision claim.[7]

**2**

As for Lin's negligent training claim, we affirm the grant of summary judgment to the District. To state a claim of negligent training under District of Columbia law, the plaintiff must show that the employer both "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner," and "armed with that actual or constructive knowledge failed to adequately [train]" its employees to prevent recurrence of the misconduct. *Blair v. District of Columbia*, 190 A.3d 212, 229 (D.C. 2018) (citation omitted).

Lin has not made that showing. In particular, she has not come forward with evidence that would allow a reasonable jury to find that the District of Columbia was aware of an alleged constitutional shortfall in its officers' behavior because, on this record, her case appears to be an isolated incident. At most, she points to one other incident that occurred before February 2016 that involved an arrest allegedly executed without probable cause. *See* Lin Opening Br. 41 (citing J.A. 535–539, 601–602, 1399–1400 and *Zhi Chen v. District of Columbia*,

---

[7] Lin failed to raise, and so forfeited, any other theory of negligent supervision.

808 F. Supp. 2d 252 (D.D.C. 2011)). But *Zhi Chen* is of no help because, in that case, the district court did not even decide whether probable cause to arrest existed; it certainly made no finding that probable cause was absent. 808 F. Supp. 2d at 255, 258. Nor do the facts as alleged in that case necessarily demonstrate a lack of probable cause. *Id*. at 255. A single case that does not even establish that an improper arrest actually occurred hardly gives the District of Columbia notice of a shortfall in its training processes. Without more evidence than that, the district court correctly ruled that Lin's negligent training claim could not go forward.

**D**

Lin challenges the district court's grant of summary judgment to the District on her claim that the police used excessive force during her February 2016 arrest, in violation of the Fourth Amendment. That argument fails.

To determine if an officer has used excessive force, "courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021) (per curiam) (internal quotation marks and citation omitted). Relevant factors include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Taking the evidence in the light most favorable to Lin, we assume that she was not "offering any resistance" as the police

handcuffed her.  *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009).  Given that, alongside her calm interaction with Officer Vullo when he initially entered the travel agency and questioned her, the need for force was very low.  Lin Br. 4.  So those facts weigh in Lin's favor.

But other facts and circumstances render the use of force reasonable under the circumstances.  The severity of the security problem was elevated in part because the officers had probable cause to believe that Lin had just physically assaulted Rodriguez, leaving a scratch on her face.  Also, Lin's physical injuries from the handcuffing were not severe.  When Lin was taken to the hospital, she was given painkillers, but no specific physical injuries other than bruising were diagnosed, and she received no other treatment.  Lin Deposition Tr. 49:2–49:5, 49:19–50:8, J.A. 1226–1227; Lin Deposition Tr. 78:11–79:1, J.A. 1255–1256.

In addition, law enforcement officers may use "some degree of physical coercion" or threat thereof in making an arrest.  *Wasserman*, 557 F.3d at 641 (holding that even though plaintiff "was not moving or offering any resistance" after the officer initiated arrest, the officer was authorized to use "some degree of physical coercion when arresting [the] suspect") (internal quotation marks and citation omitted).  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993) (formatting modified and citation omitted).

Given the record in this case, a reasonable jury could not find that the officers used excessive force in arresting Lin.

Because we affirm the district court's determination that Lin failed to make out an excessive force claim, we also affirm

the grant of summary judgment on Lin's assault and battery claim. "If the officer does not use force beyond that which the officer reasonably believes is necessary, given the conditions apparent to the officer at the time of the arrest, he is clothed with privilege" from tort claims that similarly challenge the force used. *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003); *see Holder v. District of Columbia*, 700 A.2d 738, 745 (D.C. 1997) (A jury finding that the officer "did not use excessive force" meant that "the District [was] entitled to judgment as a matter of law on the assault and battery count.").

In addition, we affirm the district court's grant of summary judgment on Lin's negligent infliction of emotional distress claim stemming from her first handcuffing. There was no negligence because the officers had probable cause at the time of her first handcuffing and did not use unreasonable force. *See Gabrou v. May Dep't Stores Co.*, 462 A.2d 1102, 1105 (D.C. 1983).

**E**

**1**

Lin also appeals the district court's grant of summary judgment on her claim that the officers discriminated against her on the basis of her race, color, or national origin, in violation of Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000d.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

In Lin's view, she was treated differently than Rodriguez and Fanning because she was not given the same opportunity as they were to tell her side of the story to the police before arrest. *See* Lin Opening Br. 48.

While Lin's frustration with the consequences of the language barrier is understandable, she has failed to carry her burden of adducing evidence of *intentional* discrimination. To start, Lin does not claim that she has produced direct evidence of intentional discrimination during her February or April arrests. *See* Lin Opening Br. 45.

So we turn to the *McDonnell Douglas* framework for considering claims of intentional discrimination based on indirect evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805 (1973); *see also Texas Dep't of Community Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *Richardson v. Loyola Coll. in Md.*, *Inc.*, 167 F. App'x 223, 224 (D.C. Cir. 2005) (per curiam) ("The district court properly granted summary judgment on [plaintiff's] Title VI * * * claims, since he neither offered direct evidence of discrimination nor met his initial burden under the *McDonnell Douglas* framework.").[8]

Under the *McDonnell Douglas* framework, Lin has the burden of "proving by the preponderance of the evidence a

---

[8] *See also Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014) ("We now join the other circuits in concluding that *McDonnell Douglas* also applies to Title VI disparate treatment claims."); *Brewer v. Board of Trustees of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007); *Bryant v. Independent Sch. Dist. No. I–38.,* 334 F.3d 928, 929–930 (10th Cir. 2003); *Fuller v. Rayburn,* 161 F.3d 516, 518 (8th Cir. 1998).

prima facie case of discrimination." *Burdine*, 450 U.S. at 252–253. Then the burden shifts to the District "to articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *Id.* at 253 (citation omitted). The burden then reverts to Lin to show that "the legitimate reasons offered by the defendant were not its true reasons, but were instead a pretext for discrimination." *Id.*

Assuming that Lin made out a *prima facie* case of discrimination, the District came forward with evidence of a legitimate, nondiscriminatory reason for its different treatment of Lin, Rodriguez, and Fanning. Specifically, in both incidents, the police officers had probable cause to arrest Lin when they first arrived on the scene. When Officers Vullo and Johnson first arrived at Focus Travel Agency, they initially had probable cause to arrest Lin but not Rodriguez. *See* Section III.B.1, *supra.*[9] Likewise, during the April arrest, the police had probable cause to arrest Lin but not Fanning because, in speaking with the police, Fanning described the attack with some detail, provided evidence of his torn jacket, and positively identified Lin as the perpetrator. *Lin I*, 2020 WL 3542253 at *10. Lin has not come forward with any evidence that the officers' conduct was merely pretext for discrimination.

**2**

Lin's discrimination claim under the District's Human Rights Act fares no better.

---

9  Only the first handcuffing is at issue for this claim, because shortly thereafter, a translator arrived and was able to gather Lin's side of the story.

The Human Rights Act generally makes it unlawful for a District of Columbia agency or office "to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of," among other things, "an individual's actual or perceived: race, color, religion, [or] national origin * * *." D.C. Code § 2-1402.73. Intentional discrimination claims under the D.C. Human Rights Act are analyzed under the same *McDonnell Douglas* test applied to Lin's Title VI claim. *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 895 n.20 (D.C. 2008); *McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007). And her claim fails for the same reasons.

To be sure, the District's Human Rights Act is broader than Title VI because even non-intentional discrimination is unlawful if the agency's practices "bear disproportionately on a protected class and are not independently justified for some nondiscriminatory reason[.]" *Jackson v. District of Columbia Board of Elections & Ethics,* 999 A.2d 89, 119 n.56 (D.C. 2010) (en banc) (quoting *Esteños*, 952 A.2d at 887). But that is of no help to Lin because the police officers' actions were "independently justified" by a nondiscriminatory reason— namely, the initial existence of probable cause to arrest Lin but not Rodriguez or Fanning. *Id.* Consequently, the district court properly granted summary judgment for the District on Lin's Human Rights Act claim.

## IV

For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings on Lin's wrongful arrest, common law false arrest, and *respondeat superior* claims.

*So ordered.*

WALKER, *Circuit Judge*, concurring in part and dissenting in part: Xingru Lin and Yokasty Rodriguez had a fight, and both called the District of Columbia police. Officers arrived and arrested Lin. Then a supervising officer named Sergeant Christopher Ritchie arrived. He talked with the arresting officers, watched video footage of the arrest, and determined that there was probable cause to charge Lin with Assault on a Police Officer. That charge was ultimately dropped, as was the charge for assaulting Rodriguez.

Lin then sued D.C., Sergeant Ritchie, and several other officers. Her claims included § 1983 wrongful arrest, common law false arrest, and respondeat superior.[1] Sergeant Ritchie and the other defendants moved for summary judgment, but the district court found a genuine factual dispute about whether Sergeant Ritchie had probable cause to charge Lin with Assault on a Police Officer. For other reasons, though, the district court granted them summary judgment on all of Lin's claims.

Today, the Court's decision to partially reverse the district court's decision depends on whether a reasonable jury could find that Sergeant Ritchie lacked probable cause to arrest Lin for Assault on a Police Officer. It could not.

Although Assault on a Police Officer was not called "Resisting Arrest" in February 2016, you wouldn't have known it from the definition: Lin assaulted a police officer if she "resist[ed]" an arresting officer "without justifiable and excusable cause."[2] D.C. Code § 22-405(b) (2013).

---

[1] Lin brought other claims as well. I agree with the Court's decision to affirm the district court's dismissal of those claims.

[2] In June 2016, the Council of the District of Columbia modified the provision by removing "resists, opposes, impedes, intimidates, or interferes with" from D.C. Code § 22-405(b). *See* 63 D.C. Reg. 4659, 4666 (Apr. 1, 2016). It instead criminalized Resisting Arrest under D.C. Code § 22-405.01(b). *See id.*

That was a low bar. For example, a person would have committed Assault on a Police Officer when he "la[id] down with his arms under his body," making it harder to handcuff him. *Coghill v. United States*, 982 A.2d 802, 805, 808 (D.C. 2009).[3] Another person was convicted because he broke away from arresting officers "by swinging his arm forward, making it difficult for the officers to handcuff him." *In re J.S.*, 19 A.3d 328, 329, 331-32 (D.C. 2011) (cleaned up). True, "speech and mere passive resistance or avoidance" did not violate the statute. *Ruffin v. United States*, 76 A.3d 845, 850 (D.C. 2013) (cleaned up). But any "obstruction or other action directed against an officer's performance in the line of duty" sufficed. *Id.* (cleaned up).

The standard for probable cause is a similarly low bar — it merely requires "a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (cleaned up). So finding probable cause for Assault on a Police Office was a low bar beneath another low bar.

Sergeant Ritchie's decision cleared that doubly low bar. In the 60 seconds that it took the officers to handcuff Lin, they went from the wall, to a bank of chairs several feet away, back to the wall, and finally to the floor. During that time, the arresting officers repeatedly asked Lin to "stop resisting," and one complained that "she keeps putting her hands in her freaking coat." JA 270-71, Ex. 2, 2:41, 2:56, 3:01; *see also* Gov't Br. 30. When Sergeant Ritchie asked the arresting officers if Lin had resisted or fought her arrest, one officer

---

[3] Although the court found the jury could have convicted the defendant of Assault on a Police Officer for his resistance to being handcuffed, it reversed his conviction on other grounds. *Id.* at 806-09.

replied, "Yeah, she was pulling, yanking, flailing." JA 270-71, Ex. 2, 21:44-21:55; *see also* Gov't Br. 31. Another officer who had reviewed the video footage told Sergeant Ritchie that Lin had been "pulling away." JA 274-75, Ex. 4, 26:29; *see also* Gov't Br. 31. Sergeant Ritchie then watched the footage himself, and although some details are obscured by the backs of various people, what is visible could quite reasonably be understood as "active and oppositional conduct" by Lin "for the purpose of thwarting" the officers' attempt to arrest her. *Ruffin*, 76 A.3d at 850 (cleaned up). Those facts are more than enough to provide "a reasonable ground for belief" that Lin resisted the officers' attempt to arrest her. *Pringle*, 540 U.S. at 371 (cleaned up).

To be sure, Lin may not have been *guilty* of Assault on a Police Officer. If she had been prosecuted, a jury might have found reasonable doubt as to whether her resistance was "without justifiable and excusable cause." D.C. Code § 22-405(b) (2013). Lin may just have been in pain. JA 1221-22. One arresting officer said she was only "tensing up" and "passively resisting." JA 352:13, 353:12. And the arresting officer who described her "pulling, yanking, flailing" nevertheless said, "I don't feel like I got APO'd" (Assault on a Police Officer-ed). JA 270-71, Ex. 2, 22:03; *see also* Lin Opening Br. 6; Gov't Br. 31; *cf.* Maj. Op. 20 ("an officer's subjective knowledge is immaterial to the probable cause inquiry").

But a reasonable ground for belief that Lin resisted the arrest is a much lower standard than proof beyond a reasonable doubt that she did. After Sergeant Ritchie heard from the other officers and watched the video, he had a reasonable ground for that belief. In my view, no reasonable jury could find otherwise. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

I therefore respectfully dissent from the Court's decision to reverse the district court as to Lin's claims for § 1983 wrongful arrest, common law false arrest, and respondeat superior. As to the Court's decision to affirm the district court's grant of summary judgment to the defendants on Lin's other claims, I concur.