# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0743

Demitrius Verros,
Appellant,

vs.

State Farm Mutual Automobile Insurance Co.,
Respondent.

**Filed September 2, 2025**
**Affirmed in part and remanded**
**Ede, Judge**

Dakota County District Court
File No. 19HA-CV-22-569

Matthew Steinbrink, Marcia K. Miller, SiebenCarey, PA, Minneapolis, Minnesota (for appellant)

Emilio R. Giuliani, Kimberly Scriver, Labore, Giuliani & Shackleford, Ltd., Minnetonka, Minnesota (for respondent)

Considered and decided by Bond, Presiding Judge; Slieter, Judge; and Ede, Judge.

## SYLLABUS

In an action by an insured against an underinsured-motorist (UIM) insurer for UIM benefits, Minnesota Rule of Civil Procedure 8.03 does not require the insurer to assert, as an affirmative defense, a request to reduce damages by the amount of money that the insured has recovered pursuant to the UIM tortfeasor's insurance policy.

# OPINION

**EDE**, Judge

This appeal follows a jury verdict for appellant insured in a dispute over underinsured-motorist (UIM) coverage. Appellant asserts that the district court: (1) abused its discretion in vacating a prior judgment for appellant in this case; (2) erred in determining that respondent insurer's request to reduce the jury's damages award based on the amount of money that appellant had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that respondent needed to assert under Minnesota Rule of Civil Procedure 8.03; and (3) erred in granting respondent's motion to deposit money with the district court under Minnesota Rule of Civil Procedure 67.01.

Because we conclude that, in vacating the prior judgment, the district court acted within its discretion under Minnesota Rule of Civil Procedure 54.02 and that the district court correctly determined that the amount of money that appellant had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that respondent needed to assert under rule 8.03, we affirm in part. But because we also conclude that the district court's findings of fact and conclusions of law are insufficient for meaningful appellate review of whether the district court erred in granting respondent's motion to deposit money with the district court under rule 67.01, we remand for further proceedings not inconsistent with this opinion.

**FACTS**

In June 2016, appellant Demitrius Verros was struck by a motorcycle while crossing a street in the course of his duties as a mail carrier for the United States Postal Service. In addition to workers' compensation benefits, Verros recovered $50,000 pursuant to the limits of the motorcyclist's (i.e., the UIM tortfeasor's) insurance policy. Because the $50,000 payment was less than the amount of damages that he had sustained, Verros later sought UIM benefits under his policy with respondent State Farm Mutual Automobile Insurance Co.

The State Farm insurance policy sets forth the following UIM limits:

> Underinsured Motor Vehicle Coverage
>
> . . . .
>
> Limits
>
> 1.     The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".
>
> > a.     The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury, is the lesser of:
> >
> > > (1) the limit shown under "Each Person"; or
> > >
> > > (2) the amount of all damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or

> organization who is or may be held legally liable
> for that bodily injury.

(Emphasis omitted.) After his insurer offered to pay him less than what he claimed was due and owing under the policy, Verros brought a breach-of-contract action against State Farm.

In his complaint, Verros alleged: "At all times material herein, [the UIM tortfeasor] was an underinsured driver and . . . Verros is entitled to recover [UIM] benefits from . . . State Farm in an amount equal to the [UIM] limits." State Farm denied the allegations and asserted a single affirmative defense: failure to state a claim. The matter proceeded to a jury trial on the issue of damages only,[1] after which the jury returned a verdict in favor of Verros, awarding him $280,507 for past and future medical expenses, past wage loss, and past and future pain and suffering.

Following the verdict, State Farm moved for collateral-source offsets against the jury's damages award.[2] Citing Minnesota Statutes section 65B.49, subdivision 4a (2024),

---

[1] State Farm conceded liability before trial.

[2] As relevant to State Farm's motion, Minnesota Statutes section 548.251 (2024), defines "collateral sources" as

> payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to:
> (1) a federal, state, or local income disability or Workers' Compensation Act; or other public program providing medical expenses, disability payments, or similar benefits; [or]
> (2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; except life insurance

4

State Farm's motion included a request that the district court reduce the jury's damages award by $50,000 based on the payment that Verros had recovered pursuant to the UIM tortfeasor's insurance policy.[3] On October 3, 2023, the district court filed an order stating that it lacked the information it needed to determine the total amount of collateral-source offsets and directing Verros to submit additional written evidence of the amounts he had received from collateral sources.[4] And on November 1, the district court filed an order granting State Farm's motion for collateral-source offsets but deferring a decision on the amount of offsets until the district court received the additional information that it had ordered Verros to provide. But that same day—despite the aforementioned October 3 and November 1, 2023 orders—the district court also entered a judgment that neither accounted for nor mentioned State Farm's motion for collateral-source offsets.

benefits available to the plaintiff, whether purchased by the plaintiff or provided by others, payments made pursuant to the United States Social Security Act, or pension payments[.]

Minn. Stat. § 548.251, subd. 1(1)–(2).

[3] Subdivision 4a of section 65B.49 provides that, "[w]ith respect to [UIM] coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle." Although it asked for the $50,000 deduction in its motion for collateral-source offsets, State Farm acknowledged that a payment recovered pursuant to the UIM tortfeasor's insurance policy was not a collateral source. *See Dean v. Am. Fam. Mut. Ins.*, 535 N.W.2d 342, 345 (Minn. 1995) (explaining that "a tortfeasor's liability insurance cannot, by definition, constitute a collateral source").

[4] In response to the district court's October 3, 2023 order, Verros petitioned this court for a writ of prohibition, which we denied. The district court withheld its decision on State Farm's motion for collateral-source offsets, pending our decision on Verros's petition.

On November 2, State Farm filed a letter with the district court, copying Verros. State Farm requested that the district court stay the November 1, 2023 judgment until the district court resolved the issue of collateral-source offsets. That same day, the district court filed an order vacating and staying the November 1, 2023 judgment, stating: "Judgment entered on November 1, 2023 is hereby VACATED and STAYED pending a determination of collateral-source offset payments."

On March 8, 2024, the district court filed an order for judgment that included several reductions to the jury's damages award that State Farm had requested in its motion for collateral-source offsets, but did not include a reduction for the $50,000 that Verros had recovered pursuant to the UIM tortfeasor's insurance policy. On March 11, 2024, judgment was entered on the March 8, 2024 order.

State Farm requested leave to file a motion for reconsideration of the March 11, 2024 judgment, which the district court granted. And State Farm moved for reconsideration, asserting that the district court's failure to reduce the jury's damages award based on the underlying $50,000 payment was erroneous. The district court granted State Farm's motion for reconsideration and reduced the jury's damages award by $50,000 under subdivision 4a of section 65B.49. That ruling is included in an order for judgment that the district court filed on August 1, 2024, after which an amended judgment was entered.

In May 2024, State Farm moved to vacate the November 1, 2023 judgment under Minnesota Rule of Civil Procedure 60.02.[5] And in June 2024, State Farm moved to deposit money with the district court pursuant to Minnesota Rule of Civil Procedure 67.01, asking to pay "$261,096.33, plus applicable interest"—i.e., an amount that State Farm had calculated was owing, plus interest that had accrued per Minnesota Statutes section 549.09 (2024). In support of the latter motion, State Farm did not provide an estimate of the accrued interest, acknowledging that "prejudgment and post-judgment interest is owing and [would] be calculated as of the time of this pending motion." State Farm also cited our nonprecedential opinion in *Robinson v. USAA*, No. A22-1678, 2023 WL 4552983 (Minn. App. Jul. 17, 2023), suggesting that an order by the district court allowing State Farm to deposit money with the district court would stop further interest from accruing.

In September 2024, the district court heard State Farm's motion to vacate the November 1, 2023 judgment and its motion to deposit money with the district court. The district court later granted both motions in an order filed on December 16, 2024. As to State Farm's motion to vacate the November 1, 2023 judgment, although the district court had vacated that judgment in its November 2, 2023 order, the district court again ordered the

---

[5] In its May 2024 motion to vacate the November 1, 2023 judgment, State Farm explained that it was seeking to vacate that judgment under rule 60.02 because, in this appeal—which Verros had filed in early May 2024, and which we had stayed pending resolution of State Farm's motion for reconsideration of the district court's March 11, 2024 judgment—Verros asserts that the district court lacked authority to vacate the November 1, 2023 judgment as it did in its November 2, 2023 order. At the same time, State Farm maintained that it "disagree[d] with [Verros's] assertion set forth in his statement of the case submitted to the court of appeals that [the district court] lacked authority to vacate . . . the judgment filed on November 1, 2023, and that [the November 2, 2023 order] therefore . . . must be considered a 'nullity.'"

judgment vacated—this time under rule 60.02. And as to State Farm's motion to deposit money with the district court, although the district court did not calculate the section 549.09 interest owed by State Farm, the district court nonetheless ruled that "the remedy requested [by State Farm] is both permitted under the applicable rules and appropriate given the circumstances." Moreover, the district court cited and characterized *Robinson*, 2023 WL 4552983, at *2, as "holding that [it] was proper for the [d]efendant to have deposited money to the [c]ourt in order to stop interest from accruing," and the district court granted State Farm's motion to deposit funds under rule 67.01.

After we filed an order dissolving a previous stay of appellate proceedings pending resolution of State Farm's motions, this appeal proceeds.[6]

**ISSUES**

I. Did the district court abuse its discretion in vacating the November 1, 2023 judgment?

II. Did the district court err in determining that State Farm's request to reduce the jury's damages award by $50,000 based on the amount that Verros had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that State Farm needed to assert under Minnesota Rule of Civil Procedure 8.03?

III. Did the district court err in granting State Farm's motion to deposit money with the district court under Minnesota Rule of Civil Procedure 67.01?

---

[6] In August 2024 and February 2025, we ordered the extension of our appellate review to include the district court's August 1, 2024 amended judgment and December 16, 2024 order.

**ANALYSIS**

Verros argues that the district court: (1) abused its discretion in vacating the November 1, 2023 judgment; (2) erred in determining that State Farm's request to reduce the jury's damages award by $50,000 based on the amount that Verros had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that State Farm needed to assert under Minnesota Rule of Civil Procedure 8.03; and (3) erred in granting State Farm's motion to deposit money with the district court under Minnesota Rule of Civil Procedure 67.01. We address each argument in turn.

I. **The district court acted within its discretion in vacating the November 1, 2023 judgment.**

Although the parties' arguments focus on whether vacatur of the November 1, 2023 judgment was an appropriate exercise of the district court's discretion under Minnesota Rules of Civil Procedure 60.01 and 60.02, we conclude based on the specific circumstances of this case that the district court's November 2, 2023 order vacating the November 1 judgment was within the discretion afforded the district court pursuant to Minnesota Rule of Civil Procedure 54.02. *See Rygwall v. ACR Homes, Inc.*, 6 N.W.3d 416, 429 (Minn. 2024) (quoting *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990), for the proposition that, "'it is the responsibility of appellate courts to decide cases in accordance with law' even if the parties fail to raise an argument").

Rule 54.02 provides:

> When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just

9

reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Minn. R. Civ. P. 54.02.

The district court's November 1, 2023 judgment "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties." *Id.* "A final judgment ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *T.A. Schifsky & Sons, Inc. v. Bahr Const., LLC*, 773 N.W.2d 783, 788 (Minn. 2009) (quotations omitted). The November 1, 2023 judgment did not end the litigation on the merits and leave nothing for the district court to do but execute the judgment because it did not fully adjudicate Verros's claims for damages, State Farm's liability for Verros's claimed damages, and State Farm's right to collateral-source offsets. In particular, the district court's October 3 and November 1, 2023 orders stated that the district court lacked the information it needed to determine the total amount of collateral-source offsets against the jury's damages award, directed that Verros submit additional written evidence, and granted State Farm's offsets motion but deferred a decision on the amount of offsets until the district court received the additional information that it had directed Verros to submit. The November 1, 2023 judgment, however, neither accounted for nor mentioned the district court's pending determination of the offsets-amount issue. As a result, this record shows that the November 1, 2023 judgment did not completely adjudicate "all the claims

or the rights and liabilities of . . . all the parties." Minn. R. Civ. P. 54.02. Moreover, in the November 1, 2023 judgment, the district court did not "express[ly] determin[e] that there [was] no just reason for delay." *Id.*

Because rule 54.02 entrusts the district court with the discretion to revise "any . . . form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties[,] . . . at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," we review a district court's rule 54.02 revision decision for an abuse of discretion. *Id.*; c*f. Lin v. Dist. of Columbia*, 47 F.4th 828, 838 (D.C. Cir. 2022) (stating that Federal Rule of Civil Procedure 54(b)—which is analogous to Minnesota Rule of Civil Procedure 54.02— "allows any order that adjudicates fewer than all the claims in a case to be revised at any time before the entry of a judgment adjudicating all the claims" and that the United States Court of Appeals for the District of Columbia Circuit "review[s] the district court's decision to reconsider its initial decision for an abuse of discretion" (quotation and citation omitted)).[7] "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022)

---

[7] *See City of Elk River v. Bolton & Menk, Inc.*, 2 N.W.3d 173, 178 n.2 (Minn. 2024) (observing that the Minnesota Supreme Court has "routinely held—including in [its] own interpretation of Rule 54.02—that '[w]here the language of the Federal Rules of Civil Procedure is similar to language in the Minnesota civil procedure rules, federal cases on the issue are instructive'" (quoting *T.A. Schifsky & Sons*, 773 N.W.2d at 787 n.3)); *Widner v. Ace Auto Parts & Salvage Co.*, 21 N.W.3d 274, 284 (Minn. App. 2025) ("This court is bound by Minnesota Supreme Court and United States Supreme Court precedential decisions but may consider federal caselaw as persuasive.").

(quotation omitted); *cf. City of Elk River*, 2 N.W.3d at 178 (in reviewing a district court's decision to certify a final partial judgment under rule 54.02, stating that "[a] district court abuses its discretion when it acts under a 'misapprehension of the law'" (quoting *Gams v. Houghton*, 884 N.W.2d 611, 620 (Minn. 2016)) (other citation omitted)).

The district court's November 2, 2023 order vacating the November 1, 2023 judgment did not include findings of fact that are unsupported by the evidence, nor did the district court misapply or misapprehend the law, nor did the district court deliver a decision that is against logic and the facts on record. *See Woolsey*, 975 N.W.2d at 506; *cf. City of Elk River*, 2 N.W.3d at 178. The November 1, 2023 judgment did not fully adjudicate Verros's claims for damages, State Farm's liability for Verros's claimed damages, and State Farm's right to collateral-source offsets. *See* Minn. R. Civ. P. 54.02. And the district court did not expressly determine that there was no just reason for delay in entering the November 1, 2023 judgment. *See id.* Thus, that form of decision—i.e., the November 1, 2023 judgment—was subject to revision by the district court at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. *See id.*

In other words, given the unresolved issue as to the amount of collateral-source offsets and the district court's broad discretion to revise the November 1, 2023 judgment under rule 54.02, the district court acted within that discretion by vacating the November 1 judgment in the November 2, 2023 order. *See Denike v. W. Nat. Mut. Ins.*, 473 N.W.2d 370, 372–73 (Minn. App. 1991) (affirming the district court's decision to vacate a

judgment under rule 54.02 when the judgment did not adjudicate all claims and did not make an express determination that there was no just reason for delay).[8]

II. **The district court correctly determined that State Farm's request to reduce the jury's damages award by $50,000 based on the amount that Verros had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that State Farm needed to assert under Minnesota Rule of Civil Procedure 8.03.**

Verros maintains that the district court erred by reducing the jury's damages award based on the $50,000 Verros had recovered pursuant to the UIM tortfeasor's insurance policy because State Farm did not assert its request for that reduction as an affirmative defense under Minnesota Rule of Civil Procedure 8.03. We respectfully disagree.

"The interpretation of the Minnesota Rules of Civil Procedure is a question of law that [appellate courts] review de novo." *Gams*, 884 N.W.2d at 616. "When interpreting court rules, [appellate courts] look first to the plain language." *Id.* (quotation omitted). "If the language of a rule is plain and unambiguous, [appellate courts] follow the rule's plain language." *Id.*

Appellate courts likewise review questions of statutory interpretation de novo. *W. end Mut. Ins. v. Allstate Ins.*, 776 N.W.2d 693, 698 (Minn. 2009). More specifically, the construction and interpretation of the Minnesota No-Fault Automobile Insurance Act—which includes provisions governing UIM benefits—is a question of law that is subject to de novo review. *Schoer v. W. Bend Mut. Ins.*, 473 N.W.2d 73, 75 (Minn. App. 1991). "The

---

[8] In light of our conclusion as to this issue, and because the November 1, 2023 judgment did not terminate the action as to any of the claims or parties, we need not address Verros's contention that the district court lost jurisdiction based on the purported expiration of the time for State Farm to appeal the November 1 judgment. *See* Minn. R. Civ. P. 54.02.

object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2024). "If the Legislature's intent is clear from the statute's plain and unambiguous language, then [appellate courts] interpret the statute according to its plain meaning." *Minnesota Internship Ctr. v. Minnesota Dep't of Educ.*, 10 N.W.3d 178, 184 (Minn. 2024) (quotation omitted).

The interpretation of an insurance policy is also a question of law that appellate courts review de novo. *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). Appellate courts must construe an insurance policy as a whole and must give unambiguous language its plain and ordinary meaning. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins.*, 383 N.W.2d 645, 652 (Minn. 1986). The extent of an insurer's liability is determined by the insurance contract with its insured, as long as the policy terms do not omit coverage required by law and do not violate applicable statutes. *Lynch ex rel. Lynch v. Am. Fam. Mut. Ins.*, 626 N.W.2d 182, 185 (Minn. 2001).

Minnesota Statutes section 65B.49, subdivision 4a, provides that, "[w]ith respect to [UIM] coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle." And Minnesota Rule of Civil Procedure 8.03 provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

14

The parties do not argue that either Minnesota Statutes section 65B.49, subdivision 4a, or Minnesota Rule of Civil Procedure 8.03 are ambiguous. We conclude that, under the plain and unambiguous language of subdivision 4a of section 65B.49, UIM coverage assumes actual but insufficient recovery under the insurance policy of a UIM tortfeasor. Thus, the statute limited State Farm's maximum UIM liability to the amount of damages that Verros had sustained but did not recover pursuant to the UIM tortfeasor's insurance policy. And Verros could not have made a claim for UIM coverage unless it was predicated on an incomplete recovery that he had received from the insurance policy of the UIM tortfeasor. *See Dohney v. Allstate Ins.*, 632 N.W.2d 598, 607 n.7 (Minn. 2001) (explaining that "the insured still must prove damages greater than the tortfeasor's policy limit in order to be *eligible* for UIM benefits"); *see also Ronning v. State Farm Mut. Auto. Ins.*, 887 N.W.2d 35, 37 (Minn. App. 2016) ("[R]ecovery from the tortfeasor's liability insurance is a 'condition precedent' to bringing an underinsured claim." (quoting *George v. Evenson*, 754 N.W.2d 335, 340 (Minn. 2008))), *rev. denied* (Minn. Jan. 17, 2017).

In short, the plain and unambiguous language of subdivision 4a of section 65B.49 sets forth a statutory limitation on liability that excludes "the amount of damages . . . recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle" from a UIM insurer's "maximum liability." Minn. Stat. § 65B.49, subd. 4a. The plain and unambiguous language of rule 8.03 therefore does not include, as an affirmative defense to a claim relating to UIM coverage, a request for a reduction of a jury's damages award based on an amount recovered pursuant to a UIM tortfeasor's insurance policy. We therefore hold that, in an action by an insured against a

15

UIM insurer for UIM benefits, Minnesota Rule of Civil Procedure 8.03 does not require the insurer to assert, as an affirmative defense, a request to reduce damages by the amount of money that the insured has recovered pursuant to the UIM tortfeasor's insurance policy.

The specific allegations at issue and the UIM coverage language reinforce our conclusion. Throughout this litigation, Verros has never asserted that he was entitled to UIM benefits from State Farm in an amount greater than the UIM limits. Instead, Verros's complaint claimed entitlement to the recovery of UIM benefits from State Farm "in an amount equal to the [UIM] limits." And the plain and unambiguous language of the parties' insurance contract reflects that the UIM limits—and State Farm's payment obligations—could not exceed Verros's damages, reduced by the amount that Verros had recovered pursuant to the UIM tortfeasor's insurance policy. Thus, consistent with subdivision 4a of section 65B.49, the scope of Verros's breach-of-contract claim and the applicable policy language establish an additional basis for our conclusion that rule 8.03 did not require State Farm to plead, as an affirmative defense, its request to reduce the jury's damages award by the amount that Verros had received under the insurance policy of the UIM tortfeasor.

We therefore conclude that the district court correctly determined that State Farm's request to reduce the jury's damages award by $50,000 based on the amount that Verros had recovered pursuant to the UIM tortfeasor's insurance policy was not an affirmative defense that State Farm needed to assert under rule 8.03.

16

**III.** **The district court's findings of fact and conclusions of law are insufficient for meaningful appellate review of whether the district court erred in granting State Farm's motion to deposit money with the district court under Minnesota Rule of Civil Procedure 67.01.**

Verros asserts that the district court erred in granting State Farm's motion to deposit money with the district court pursuant to Minnesota Rule of Civil Procedure 67.01 because such a deposit does not stop interest from accruing under Minnesota Statutes section 549.09. Although he acknowledges that "it is not clear that the district court (citing *Robinson*) held that depositing funds stopped interest from accruing," he still argues that, "to the extent that it did, that finding must be reversed." We conclude that the district court's findings of fact and conclusions of law are insufficient for meaningful appellate review of this issue.

As mentioned above, our review of the district court's interpretation of court rules and statutes is de novo. *Gams*, 884 N.W.2d at 616; *W. Bend Mut. Ins.*, 776 N.W.2d at 698. Rule 67.01 provides that, "[i]n an action in which any part of the relief sought is a judgment for a sum of money . . . , a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such money or thing." Subdivision 1(a) of section 549.09 states that:

> Subdivision 1. When owed; rate. (a) When a judgment or award is for the recovery of money, including a judgment for the recovery of taxes, interest from the time of the verdict, award, or report until judgment is finally entered shall be computed by the court administrator or arbitrator as provided in paragraph (c) and added to the judgment or award.

17

Minn. Stat. § 549.09, subd. 1(a). And subdivision 1(c)(2) of section 549.09 requires that, "[f]or a judgment or award over $50,000, . . . the interest rate shall be ten percent per year until paid." *Id.*, subd. 1(c)(2).

The parties do not argue that either Minnesota Rule of Civil Procedure 67.01 or Minnesota Statutes section 549.09, subdivision 1(a), are ambiguous. Nothing in the plain and unambiguous language of rule 67.01 addresses the effect, if any, of a deposit of money with the district court on the accrual of interest under section 549.09. *See Roach v. County of Becker*, No. A20-0739, 2021 WL 318003, at *6 (Minn. App. Feb. 1, 2021) (observing that "[n]othing in . . . rule [67.01] addresses the implications, if any, of a deposit of funds on the accrual of postjudgment interest under section 549.09" and that "[t]he parties have cited no Minnesota case holding that a deposit under Minn. R. Civ. P. 67 halts the accrual of postjudgment interest"), *rev. denied* (Minn. Aug. 24, 2021);[9] *cf. Soderbeck v. Ctr. for Diagnostic Imaging, Inc.*, 793 N.W.2d 437, 444 (Minn. App. 2010) (noting that "there is nothing in the language of Minn. R. Civ. P. 67.01 or in cases interpreting this rule that would indicate that a party can avoid an order to pay interest pursuant to Minn. Stat. § 334.01, subd. 1 [(2008)], by simply depositing the funds at issue with the district court").

---

[9] "Nonprecedential opinions . . . are not binding authority except as law of the case, res judicata or collateral estoppel, but nonprecedential opinions may be cited as persuasive authority." Minn. R. Civ. App. 136.01, subd. 1(c). We are mindful that *Roach* is fact-bound, given that it concerned a unique situation in which "the withdrawal of funds [that had been deposited into the district court] was conditioned on an absolute waiver of all related claims." 2021 WL 318003, at *6. Despite our acknowledgment of that limitation, we cite *Roach* as persuasive authority for its observation that neither the plain language of rule 67.01 nor any Minnesota case cited by the parties to that appeal provides that a deposit of funds with the district court halts the accrual of interest under section 549.09.

Our nonprecedential opinion *Robinson,* 2023 WL 4552983, at \*2—which the district court cited and characterized as "holding that [it] was proper for the [d]efendant to have deposited money to the [c]ourt in order to stop interest from accruing"—does not indicate otherwise.[10] In *Robinson*, the appellant insureds' "sole argument on appeal [was] that the district court lacked jurisdiction to consider and decide [the respondent insurer's] motion to deposit the funds into court" while a prior appeal was pending, but the appellants did "not challenge the merits of the district court's decision." *Id.* at \*1. And while the respondent "contend[ed] that . . . [the court of appeals] lack[ed] jurisdiction because the challenged order [was] not appealable," its argument likewise did not require that we decide whether a deposit of funds under rule 67.01 stopped interest from accruing under section 549.09. *Id.*

Opinions must be read in light of "the specific controversy then before [the] court," *Skelly Oil Co. v. Comm'r of Tax'n*, 131 N.W.2d 632, 645 (Minn. 1964), and appellate decisions are not authority on issues that were "never raised or called to the attention of the court," *Chapman v. Dorsey*, 41 N.W.2d 438, 443 (Minn. 1950). Thus, although *Robinson* discusses the procedural history of the district court's decision to grant the respondent's motion for leave to deposit money with the district court under rule 67.01—which the respondent had filed for the purpose of stopping interest from accruing—our decision

---

[10] Nor does *Ed Herman & Sons v. Russell*, which is the decision on which State Farm primarily relies in defending the district court's December 16, 2024 order granting State Farm's motion to deposit money with the district court. 535 N.W.2d 803 (Minn. 1995). That case is distinguishable because it involved a mortgage dispute and did not concern analogous law requiring interest, as is mandated by section 549.09 here. *See id.* at 808.

19

resolved only the jurisdictional questions presented by the parties and is therefore not persuasive authority that a deposit of funds under rule 67.01 can halt the accrual of section 549.09 interest. *See Robinson*, 2023 WL 4552983, at *1; *see also Skelly Oil Co.*, 131 N.W.2d at 645; *Chapman*, 41 N.W.2d at 443. And *Robinson* is distinguishable because the appellants in that case "refused to accept [the respondent's] tender of payment," 2023 WL 4552983, at *1 (quotation omitted), while the record before us does not establish that Verros similarly declined to accept such funds from State Farm.

Here, even though the district court did not calculate the section 549.09 interest owed by State Farm, the district court granted State Farm's motion to deposit money with the district court under rule 67.01 and ruled that "the remedy requested [by State Farm] is both permitted under the applicable rules and appropriate given the circumstances." And, through its citation and characterization of *Robinson,* the district court appeared to adopt State Farm's suggestion in its motion that an order allowing State Farm to deposit money with the district court would stop further interest from accruing.

Based on the insufficiency of the district court's findings of fact and conclusions of law supporting the December 16, 2024 order granting State Farm's motion to deposit money with the district court, we conclude that remand is necessary. Although the district court's decision to grant the motion and its treatment of *Robinson* might imply that a deposit of money with the district court would stop further interest from accruing, the district court's order does not expressly say so. But even assuming that it does, it is unclear if the district court used the statutory interest rate of ten percent per year that is required under subdivision 1(c)(2) of section 549.09 because the appellate record does not include

20

the district court's calculation of interest, nor does it include the date the district court may have intended for interest to stop accruing.[11] Moreover, the record fails to establish that any money deposited with the district court by State Farm has been available to Verros— "paid" for purposes of subdivision 1(c)(2) of section 549.09—because the district court neither ordered disbursement nor made any findings about the availability of the funds.

In sum, because the district court's findings of fact and conclusions of law are insufficient for meaningful appellate review of whether the district court erred in granting State Farm's motion to deposit money with the district court under rule 67.01, we remand the district court's December 16, 2024 order for further proceedings not inconsistent with this opinion. *See Gams v. Houghton*, 869 N.W.2d 60, 65 (Minn. App. 2015) ("[R]emand is the appropriate remedy when the district court has made insufficient findings to enable appellate review."), *aff'd as modified*, 884 N.W.2d 611 (Minn. 2016).

## DECISION

The district court acted within its discretion under Minnesota Rule of Civil Procedure 54.02 by entering the November 2, 2023 order vacating the November 1, 2023 judgment.

Based on the plain and unambiguous language of Minnesota Statutes section 65B.49, subdivision 4a, a request for reduction of a jury's damages award by the amount of money that an insured has recovered pursuant to the UIM tortfeasor's insurance policy

---

[11] In support of its motion to deposit money with the district court, State Farm itself was imprecise on this point, providing no estimate of the accrued interest and stating only that "prejudgment and post-judgment interest . . . [would] be calculated as of the time of this pending motion."

is not an affirmative defense that must be asserted under Minnesota Rule of Civil Procedure 8.03. Thus, the district court correctly determined that rule 8.03 did not require State Farm to assert, as an affirmative defense, its request for a $50,000 reduction of the jury's damages award based on the amount that Verros had recovered pursuant to the insurance policy of the UIM tortfeasor. We therefore affirm in part.

But the district court's findings of fact and conclusions of law are insufficient for meaningful appellate review of whether the district court erred in granting State Farm's motion to deposit money with the district court under Minnesota Rule of Civil Procedure 67.01. We therefore remand the district court's December 16, 2024 order granting State Farm's motion to deposit money with the district court for further proceedings not inconsistent with this opinion.

**Affirmed in part and remanded.**